UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| EDUARDO JUAREZ,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Operations, performing duties and functions not reserved to the Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. CV 17-05589-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Eduardo Juarez ("Plaintiff") appeals the Social Security Commissioner's final decision denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is reversed and this matter is remanded.

**I.**

**BACKGROUND**

In April 2013, Plaintiff filed applications for SSI and DIB alleging disability beginning on March 27, 2013. See Administrative Record ("AR")

276-90, 302. His claim was denied both initially and upon reconsideration. See AR 155-71. On March 16, 2016, a hearing was held before an Administrative Law Judge ("ALJ"). See AR 67-96. On April 8, 2016, the ALJ issued an unfavorable decision finding Plaintiff not disabled. See AR 28-41.

The ALJ determined that Plaintiff had severe impairments of an intracranial brain injury, migraine headaches, and organic brain syndrome. See AR 31. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, limited to unskilled work; occasionally balance; frequently climb ramps or stairs, stoop, kneel, crouch, and crawl; never climb ladders, ropes, scaffolds; and avoid concentrated exposure to hazards such as machinery and heights. See AR 35-36. Based on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could not perform his past relevant work as a self-employed automobile mechanic. See AR 40. Also by way of the VE's testimony, the ALJ determined that Plaintiff could perform work that was available in the national economy—specifically, as a dishwasher, a hand packer, and a grocery bagger. See AR 41. Thus, the ALJ concluded that Plaintiff was not disabled. See id.

On April 28, 2016, the Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 12-32. Plaintiff then sought review by this Court. See Dkt. 1.

## II.
## DISCUSSION

The parties dispute whether (1) the ALJ properly evaluated the opinions of two treating physicians and a physician's assistant; (2) the ALJ's RFC is supported by substantial evidence; (3) the ALJ improperly discounted Plaintiff's subjective symptom testimony; and (4) the ALJ improperly rejected testimony from Plaintiff's wife and daughter. See Dkt. 17, Joint Stipulation ("JS"). For the reasons set forth below, the Court finds that the ALJ offered an

2

insufficient basis for rejecting the opinion of one of Plaintiff's treating physicians. The Court also finds that the ALJ's limitation of Plaintiff to "unskilled work" did not adequately address the ALJ's own finding that Plaintiff had moderate difficulties with respect to concentration, persistence, or pace. Because the Court concludes that these issues require remand, the Court will not decide whether Plaintiff's remaining claims of error would independently warrant relief. Upon remand, the ALJ may wish to consider Plaintiff's other claims of error.

**A.      Treating Sources**

    **1.      Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996).[1] A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a nonexamining physician. See Lester, 81 F.3d at 830. When a treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31).

---

[1] Social Security Regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."). Accordingly, the Court applies regulations in effect at the time of the ALJ's April 2016 decision.

Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. See 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

A physician assistant is not an "acceptable medical source." 20 C.F.R. §§ 404.1513(a), 416.923(a). Rather, a physician assistant is included in the list of medical professionals defined as "other sources." 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Although their opinions may be used to determine the severity of a claimant's impairments and how those impairments affect the ability to work, see id., such professionals are not considered to be the equivalent of treating physicians. See Jamerson v. Chater, 112 F.3d 1064, 1066-67 (9th Cir. 1997). To reject the testimony of such sources, the ALJ must only give "'reasons germane to each witness for doing so.'" Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010)).

### 2. Relevant Facts

Plaintiff went to the emergency room at Ventura County Medical Center on March 28, 2013, a day after he sustained a head injury in a car accident. See AR 399. He had declined medical treatment after the accident and had not lost consciousness, but later developed headaches and vomiting. See id. A CT scan reflected an acute subarachnoid hemorrhage. See AR 407.

4

The hospital admitted him to the intensive care unit due to the risk of a "vasospastic event." AR 401. He spent 10 days in the hospital and was discharged on April 8, 2013. See AR 403. During the time he was hospitalized medical staff had difficulty keeping his blood sodium levels up, a sign of "cerebral salt-wasting," a symptom frequently observed in cases of traumatic brain injury. See AR 403. A follow-up CT angiogram of the head on April 5, 2013 was "unremarkable" and showed that a hemorrhage seen on a March 2013 angiogram was no longer visible. AR 424.

While still in the hospital, Plaintiff was evaluated by Dr. Eric Watson, a rehabilitation medicine specialist. See AR 470-71. Dr. Watson then oversaw Plaintiff's rehabilitation over the next several months. See AR 533-34, 584-87, 619, 622-29. In February 2016, Dr. Watson completed a headache questionnaire in which he reported that Plaintiff suffers from daily headaches and concluded that Plaintiff would need to take unscheduled breaks of 30 minutes to lie down. See AR 706. Dr. Watson also stated that Plaintiff was capable of "low stress jobs." Id. Although the ALJ gave the records from Plaintiff's examinations with Dr. Watson great probative weight, he gave "little probative weight" to his February 2016 assessment because he "failed to support the basis for his conclusions with any significant narrative discussion of objective findings." AR 39.

Dr. Alexander Oparin treated Plaintiff from January 2014 to August 2015. See AR 607-16, 645-52, 656-79. During these visits, Plaintiff often complained of headaches and residual symptoms from his brain injury such as memory loss. See AR 613, 645. But Plaintiff also appeared to be symptom-free during other visits. See AR 664, 668, 673. In an August 2015 letter, Dr. Oparin stated that Plaintiff has permanent brain damage and "permanent[] posttraumatic moderately severe dementia." AR 723. As a result, Dr. Oparin stated that Plaintiff was unable to perform any sustained mental or physical

exertion for longer than 20-30 minutes. See id. Dr. Oparin also stated that Plaintiff had severe difficulties with short and long term memory, information processing, problem solving, and simple physical and mental tasks, all of which prevented him from seeking and finding any gainful employment. See id. The ALJ gave "little probative weight" to Dr. Oparin's assessment because he did not include any significant discussion of clinical findings and his conclusion was inconsistent with the overall mental health evidence. See AR 39.

Dr. Pari M. Young, a neurologist, treated Plaintiff from March 2015 to August 2015. See AR 681-701. On January 14, 2016, Ray Ruiz, a physician assistant in Dr. Young's office, completed a functional capacity form. See AR 708-13. Ruiz opined that Plaintiff would require unscheduled work breaks eight times daily for 30 minutes; was incapable of low stress jobs; and would be absent from work more than 4 times per month. See AR 712. The ALJ rejected Ruiz's assessment, noting that he failed to support his conclusions with a narrative discussion of objective findings and that his assessment was entitled to less probative weight because he was not an acceptable medical source. See AR 39.

### 3. Analysis

#### a. Dr. Watson

Plaintiff first argues that the ALJ improperly rejected Dr. Watson's February 2016 opinion regarding Plaintiff's need to take breaks and limitation to low-stress jobs. See JS at 5. The ALJ reasoned that Dr. Watson completed a "check-the-box" form and failed to support his conclusions with any narrative discussion of objective findings. See AR 39.

Because Dr. Watson's opinion was controverted by other doctors, the ALJ had to offer specific and legitimate reasons for rejecting it. The ALJ's reason for giving "little probative weight" to Dr. Watson's opinion is

insufficient. As an initial matter, it is at least partially incorrect to say that Dr. Watson did not support his conclusion with a discussion of objective findings, as he expressly cited the CT scan taken when Plaintiff was hospitalized that showed an "acute subarachnoid hemorrhage." AR 704. Additionally, Dr. Watson's treatment records from the several months in which Dr. Watson oversaw Plaintiff's rehabilitation—to which the ALJ gave "great probative weight"—document Plaintiff's frequent difficulties with memory loss and concentration. See AR 533, 584, 619, 622, 626. Dr. Watson also recorded how Plaintiff's performance during occupational therapy reflected memory loss. See AR 626. Taken together, the CT scan on which Dr. Watson relied and his treatment notes support his conclusions about Plaintiff's limitations. See Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014) (holding that opinions expressed on "check-the-box" form were entitled to weight because they were based on significant experience with claimant and supported by treatment records).

b. Dr. Oparin

Plaintiff next argues that the ALJ improperly rejected Dr. Oparin's opinion. See JS at 7-9. The ALJ noted that Dr. Oparin's opinion included no significant discussion of clinical findings and was inconsistent with the overall mild mental health evidence. See AR 39.

The ALJ did offer a specific and legitimate reason for rejecting Dr. Oparin's opinion, as that opinion about Plaintiff's limitations was not consistent with his treatment records. Those records reflect few if any mental limitations other than occasional complaints of forgetfulness. Dr. Oparin's treatment records consistently reflected "normal" psychiatric findings. See AR 607-09, 610-12, 613-15, 645-48, 649-52, 656-59, 660-63, 664-67, 668-72, 673-76, 677-79. None of Dr. Oparin's treatment records contain any indication that Plaintiff is unable to sustain mental or physical exertion for longer than 20-30

minutes. Likewise, his treatment records do not reflect any finding that he cannot process information, solve problems, or perform simple physical and mental tasks, all of which appear as limitations in Dr. Oparin's assessment.

   c. Ruiz

Last, Plaintiff argues that the ALJ improperly rejected the opinion of Ruiz, the physician assistant. See JS at 9-10. The ALJ noted that Ruiz's opinion was entitled to less probative weight than physicians of record; the ALJ also rejected Ruiz's opinion because of the "check-the-box" nature of the opinion and Ruiz's failure to support his conclusions with any narrative discussion of objective findings. See AR 39.

The Court may give the opinion of a physician assistant who is closely working with and supervised by a doctor the weight of an acceptable medical source. See Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1234 (9th Cir. 2011) ("To the extent nurse practitioner Wrona-Sexton was working closely with, and under the supervision of, Dr. Thompson, her opinion is to be considered that of an 'acceptable medical source.'"). But even under that standard, the ALJ gave sufficient specific and legitimate reasons for rejecting Ruiz's opinion. Neither Ruiz's nor Dr. Young's treatment notes support Ruiz's opinion about Plaintiff's functional limitations. For example, in March 2015 Dr. Young found no evidence of aphasia or confusion, gave Plaintiff a mini-mental status examination score of 27 out of 30, and found that he was able to recall objects in 5 minutes with categorical clues. See AR 683-84. Plaintiff's neurological examination was "generally normal." AR 684. Nothing in these records provide any support for Ruiz's conclusion that Plaintiff would need to take 8 thirty-minute unscheduled breaks per 8-hour work day, could not perform even "low stress" jobs, and would miss work more than 4 times a month. See AR 712.

**B. Plaintiff's RFC**

Plaintiff argues that the ALJ's RFC was not supported by substantial evidence. See JS at 24. As an initial matter, to the extent the RFC is inconsistent with Dr. Watson's opinion, the ALJ should reassess the RFC if necessary following a re-evaluation of Dr. Watson's opinion.

Additionally, Plaintiff argues that the ALJ's limitation to "unskilled work" does not adequately reflect the ALJ's own finding that Plaintiff had moderate difficulties with concentration, persistence, or pace. See JS at 28 (citing AR 35). The Court agrees.

Under Social Security regulations, "unskilled work" is work that needs "little or no judgment to do simple duties." See 20 C.F.R. §§ 404.1568(a), 416.968(a). Social Security Ruling 85-15 states that the "basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions." Other courts have concluded that these mental demands are at least potentially inconsistent with moderate limitations in concentration, persistence, or pace. See Pronovost v. Astrue, No. 12-01168, 2013 WL 1092902, at *1 (D. Ariz. Mar. 15, 2013) (remanding in light of the Commissioner's concession that it was error for the ALJ to find that claimant had moderate limitations in concentration, persistence, or pace, but then to limit her to unskilled work without including detailed functional limitations); Cavanaugh v. Colvin, No. 13-1222, 2014 WL 7339072, at *4 (D. Ariz. Dec. 23, 2014) ("The ALJ failed to provide an explanation as to how a restriction to unskilled work accounted for a moderate limitation in concentration, persistence, or pace."). On remand, the ALJ should further develop the record with respect to these limitations and incorporate any resulting changes in the RFC into hypotheticals addressed to the VE.

9

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings.

Dated: December 17, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge